**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| KIRIL ZAHARY BASARGIN,<br>Plaintiff,<br>v.<br>CITY OF HOMER, ALASKA, *et al.*<br>Defendants. | Case No. 3:25-cv-00068-SLG |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court at Docket 14 is Defendants City of Homer, Homer Police Department, Officer Morgan Tracy, and Officer Lee's Joint Motion for Summary Judgment. Plaintiff Kiril Zahary Basargin responded in opposition at Docket 16, to which Defendants replied at Docket 17. Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

The facts, as presented by Defendants' evidence, including several audio recordings, and undisputed by any sworn testimony or other evidence of Plaintiff, are as follows:[1]

On January 6, 2024, Homer Police Department dispatch advised officers to watch for a silver GMC pickup truck reportedly being driven by an intoxicated

[1] The Court addresses below why it relies on Defendants' evidence for purposes of resolving this motion. *See infra* Section II. Summary Judgment Record.

person.[2] Officer Morgan Tracy observed a vehicle matching that description traveling 56 miles per hour in a 45 mile per hour zone.[3] After Officer Tracy activated his emergency lights, the vehicle continued past several available stopping places before stopping in a community center parking lot.[4] Officer Tracy then parked his patrol vehicle behind the vehicle.[5]

When Officer Tracy approached the vehicle, he requested that its occupant, Mr. Basargin, roll down his window or open the driver-side door and that Plaintiff produce his driver's license and vehicle registration.[6] Plaintiff rolled down his heavily tinted driver-side window only a few inches and produced papers that did not include his driver's license or vehicle registration.[7] According to Officer Tracy, he smelled alcohol emanating from Plaintiff's vehicle.[8]

After Plaintiff did not produce the requested identification, Office Tracy called for assistance, and Officer Charles Lee arrived.[9] Over the next seven minutes, the officers repeatedly directed Plaintiff to provide identification, keep his hands visible,

[2] Docket 14-1 at 2; Docket 15 ¶ 6; Docket 15-1 at 11.

[3] Docket 14-1 at 2; Docket 15 ¶ 6; Docket 15-1 at 11–12.

[4] Docket 14-1 at 3; Docket 15 ¶ 7; Docket 15-1 at 11–12.

[5] Docket 14-1 at 3; Docket 15 ¶ 7; Docket 15-1 at 11–12.

[6] Audio Recording of Arrest, HM24000033-MWT0-Basargin Contact, Arrest.MP3 (recorded Jan. 6, 2024) (filed conventionally) [hereinafter Arrest Recording].

[7] Docket 14-1 at 3–4; Docket 15 ¶ 8; Arrest Recording.

[8] Docket 14-1 at 4; Docket 15 ¶ 8; Docket 15-1 at 11–12.

[9] Docket 14-1 at 3–4; Docket 15-1 at 11; Arrest Recording.

and exit his vehicle and warned Plaintiff that they would break the window of his vehicle if he did not comply.[10] However, Plaintiff repeatedly moved his hands out of the officers' view and reached for objects inside the vehicle.[11] After Plaintiff failed to comply with another directive to keep his hands visible, Officer Tracy broke the driver-side window, unlocked and opened the door, and removed Plaintiff from his vehicle through the doorway.[12] According to Officer Tracy, both he and Plaintiff slipped and fell to the ground as he removed Plaintiff from his vehicle.[13] Officer Tracy then handcuffed Plaintiff and placed him in his patrol vehicle within approximately one minute after he broke Plaintiff's window.[14] The whole encounter from the stop to the arrest lasted approximately 18 minutes, during which Officer Tracy asked Plaintiff to identify himself or roll down his window more than ten times.[15] Before he broke the window, Officer Tracy had warned Plaintiff three times that he would need to break Plaintiff's window to obtain his identification if he did not present it.[16]

---

[10] Docket 14-1 at 4–5; Docket 15 ¶¶ 8–9; Arrest Recording.

[11] Docket 14-1 at 5; Docket 15 ¶ 9; Arrest Recording.

[12] Docket 14-1 at 5; Docket 15 ¶¶ 9-11, 14; Docket 15-2.

[13] Docket 14-1 at 5–6; Docket 15 ¶ 11; Arrest Recording.

[14] Docket 14-1 at 5–6; Docket 15 ¶¶ 9, 11, 14; Docket 15-2; Arrest Recording.

[15] Arrest Recording.

[16] Arrest Recording.

Officer Tracy then transported Plaintiff from the community center parking lot to the police department. Neither Plaintiff nor Officer Tracy spoke during the transport.[17]

At the police station, Officer Tracy observed blood on Plaintiff's hands and asked Plaintiff whether he was injured.[18] Plaintiff responded yes and stated that Officer Tracy had hurt his back.[19] Officer Tracy promptly transported Plaintiff to South Peninsula Hospital.[20] During the transport, Plaintiff criticized Officer Tracy's conduct, asserted that Officer Tracy had injured him and damaged his vehicle, and made several references to the Constitution and Officer Tracy's family.[21] Officer Tracy responded that Plaintiff had failed to obey lawful orders and was driving over the speed limit, but repeatedly stated that he does not want to hurt Plaintiff.[22] At no time during this transport did Plaintiff state that his wrist or head had been injured.

---

[17] Audio Recording of Transport to PD, HM24000033-MWT0-Basargin Transport to PD.MP3 (recorded Jan. 6, 2024) (filed conventionally) [hereinafter PD Transport Recording].

[18] Audio Recording of Transport to SPH, HM24000033-MWT0-Basargin Transport to SPH.MP3 (recorded Jan. 6, 2024) (filed conventionally) [hereinafter SPH Transport Recording].

[19] SPH Transport Recording.

[20] Docket 14-1 at 6; Docket 15 ¶¶ 12, 16; Docket 15-5; SPH Transport Recording.

[21] SPH Transport Recording.

[22] SPH Transport Recording.

Upon arriving at the hospital, Officer Tracy told hospital staff that Plaintiff had cuts on his hands and complained of back pain.[23] Plaintiff also complained to hospital staff of significant pain in his left hand and later stated that his toe was twisted.[24] Hospital personnel evaluated Plaintiff, including his complaint of back pain, and medically cleared him for detention.[25]

Officer Tracy then drove Plaintiff back to the police station, where a breath sample measured his blood alcohol concentration to be .203, which was almost three times the legal limit.[26] Plaintiff was charged with felony driving under the influence, driving with a revoked license, and failing to stop at an officer's direction.[27]

On April 4, 2025, Plaintiff initiated this action against the City of Homer, the Homer Police Department, Officer Tracy, Officer Lee, and unnamed Doe Defendants, alleging constitutional and state law violations arising from the officers' use of force during his arrest and provision of medical care following his arrest.[28] Plaintiff asserts claims under 42 U.S.C. § 1983 for excessive force, denial

---

[23] SPH Transport Recording.

[24] SPH Transport Recording.

[25] Docket 14-1 at 6; Docket 15 ¶ 12; Docket 15-1 at 6.

[26] Docket 14-1 at 7; Docket 15-1 at 12; Audio Recording of Booking, HM24000033-MWT0-Basargin Booking Room, DataMaster.MP3 (recorded Jan. 6, 2024) (filed conventionally) [hereinafter Booking Recording].

[27] Docket 14-1 at 7; Docket 15-1 at 12.

[28] Docket 1 at 1, 5–10.

of medical care, and municipal liability, as well as state law claims for assault, battery, and negligence.[29] On January 12, 2026, Defendants moved for summary judgment on all of Plaintiff's claims.[30]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the movant.[31] If the movant meets this burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial."[32] The non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[33] "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

---

[29] Docket 1 at 5–10.

[30] Docket 14; Docket 14-1 at 8–18.

[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[32] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e) (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[33] *Anderson*, 477 U.S. at 248-49.

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."[34]

When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[35] However, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[36] When video or audio of the event at issue is available, courts "view[] the facts the facts in the light depicted by the videotape" or audio recording.[37]

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to summary judgment, "the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." To obtain a continuance for further discovery, the nonmovant must demonstrate that "(1) it has set forth in affidavit form the specific

---

[34] Fed. R. Civ. P. 56(c)(1)(A).

[35] *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[36] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[37] *Id.* at 381; *see also Scott v. County of San Bernardino*, 903 F.3d 943, 952 (9th Cir. 2018) (relying on an audio recording of the encounter at issue in that case).

facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."[38]

"Once the district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which establishe[s] a timetable for amending pleadings," Rule 16's standard controls.[39] Pursuant to the Rule 16 standard, the pretrial scheduling order can only be modified "for good cause."[40] The "good cause" inquiry "primarily considers the diligence of the party seeking the amendment."[41] While "prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification . . . [and] [i]f that party was not diligent, the inquiry should end."[42]

## DISCUSSION

Defendants assert that "[t]he officers and the Police Department did not violate Mr. Basargin's constitutional rights" and that each of Plaintiff's claims fails as a matter of law.[43] Plaintiff responds that the record presents genuine disputes

---

[38] *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The Court notes that Rule 56(d) was formerly Rule 56(f) before the 2010 amendments to the Federal Rules of Civil Procedure.

[39] *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).

[40] Fed. R. Civ. P. 16(b)(4); *see also Mammoth Recreations, Inc.*, 975 F.2d at 608.

[41] *Mammoth Recreations, Inc.*, 975 F.2d at 609.

[42] *Id.*

[43] Docket 14-1 at 8; Docket 17 at 4.

concerning the force used, the adequacy of the medical care he received, and the City's responsibility for the officers' conduct.[44]

## I. Rule 56(d)

The Court first addresses Plaintiff's assertion that Defendants' motion for summary judgment is "premature and should be denied because discovery remains ongoing."[45] Plaintiff contends that he has not yet deposed relevant witnesses, retained an expert, or adequately reviewed Defendants' discovery production.[46] Defendants assert that Plaintiff failed to diligently pursue discovery before fact discovery closed on November 24, 2025, and that "[a]dditional discovery would be fruitless."[47] The Court construes Plaintiff's assertions as a request for relief under Rule 56(d).

Rule 56(d) permits a court to defer or deny a summary judgment motion when the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." To obtain relief, the nonmovant must identify the specific facts sought, show that those facts exist, and explain why they are essential to opposing summary judgment.[48] A lack of

---

[44] Docket 16 at 8–22.

[45] Docket 16 at 2.

[46] Docket 16 at 2, 6–8, 19–21.

[47] Docket 17 at 3–4.

[48] *Family Home & Fin. Ctr., Inc.*, 525 F.3d at 827.

diligence in pursuing discovery is an independently sufficient reason to deny relief.[49]

Here, Plaintiff filed no affidavit or declaration, and his opposition generally lists categories of testimony and information he hopes to obtain but does not identify particular facts that likely exist and would defeat Defendants' motion. Further, fact discovery closed on November 24, 2025, and expert disclosures were due September 25, 2025.[50] Defendants did not file their motion until January 2026, after these deadlines had passed. Plaintiff does not explain why he did not take the proposed depositions or seek appropriate relief before those deadlines had elapsed. Accordingly, Plaintiff's request under Rule 56(d) is denied.

## II. Summary Judgment Record

The Court next addresses what materials it may consider in assessing whether a genuine dispute of material fact exists. The parties offer materially different accounts of Plaintiff's arrest. In his unverified complaint and his opposition brief, Plaintiff maintains that he did not pose a threat or actively resist arrest, that Officer Tracy pulled him through the broken window and threw him to the pavement, and that the force shattered his wrist and caused injuries to his head and other parts of his body.[51] Plaintiff also maintains that the hospital examination

---

[49] *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002).

[50] Docket 17 at 3 (citing Docket 10).

[51] Docket 16 at 2–4, 9–12.

was cursory and that Defendants influenced hospital personnel to clear him for detention without diagnosing his injuries.[52]

In *Scott v. Harris*, the Supreme Court considered how courts should evaluate video evidence at summary judgment.[53] The plaintiff brought an excessive force claim against a police officer after the police officer rammed his vehicle into the plaintiff's vehicle during a high-speed chase.[54] The plaintiff asserted that "there was little, if any, actual threat to pedestrians or other motorists, as the roads were mostly empty and [plaintiff] remained in control of his vehicle."[55] But the police officer's dashcam footage showed the plaintiff "racing . . . at speeds that are shockingly fast," "swerv[ing] around more than a dozen other cars, cross[ing] the double-yellow line, and forc[ing] cars traveling in both directions to their respective shoulders to avoid being hit."[56]

The Supreme Court held that the appellate court had erred when it relied on the plaintiff's version of events in affirming the district court's denial of the officer's motion for summary judgment.[57] The Supreme Court reasoned that the district

[52] Docket 16 at 4, 17–18.

[53] 550 U.S. at 378–81.

[54] *Id.* at 375.

[55] *Id.* at 378.

[56] *Id.* at 379-80.

[57] *Id.* at 376, 380-81.

court should have viewed the facts in the "light depicted in the videotape,"[58] because "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[59] The Ninth Circuit has since applied the Supreme Court's reasoning in *Scott* to other types of evidence, including audio recordings.[60]

Here, Defendants support their account of the events in question with Officer Tracy's sworn affidavit, police records, photographs, other exhibits concerning Plaintiff's arrest and medical evaluation, and five contemporaneous audio recordings consisting of Plaintiff's arrest, his transport to the Homer Police Department, his transport to South Peninsula Hospital, his subsequent transport back to the Homer Police Department, and his detention in the booking room.[61]

Plaintiff, by contrast, has submitted no declaration, affidavit, deposition testimony, medical records, or other evidence supporting his unsworn account of the events in question. Moreover, Plaintiff's opposition contains multiple factual assertions that are "blatantly contradicted by" the contemporaneous audio

[58] *Id.* at 381.

[59] *Id.* at 380.

[60] *See, e.g., Scott*, 903 F.3d at 952.

[61] Docket 14-3; Docket 15.

recordings.[62] For example, Plaintiff alleges that, "[a]fter the violent arrest," he "immediately complained of severe pain in his left wrist, head, and back," observed that "his wrist was deformed," and "suspected [that] it was broken."[63] But the audio recordings of Plaintiff's arrest and transport to the Homer Police Department reflect that neither Plaintiff nor Officer Tracy spoke during the transport to the police department.[64] Then, upon arriving at the police department, Officer Tracy was uncuffing Plaintiff and said "I see some blood Mr. Basargin. Are you injured right now?"[65] When Plaintiff answered "yes," Officer Tracy responded, "okay, let me take you to the hospital then, I want to get you checked out" and immediately began transporting Plaintiff to the hospital.[66]

Plaintiff also alleges that "[h]ospital staff . . . quickly 'cleared' Plaintiff for incarceration without conducting the diagnostic tests necessary to identify the full extent of Plaintiff's injuries" "at the direction or urging of Officer Tracy."[67] However, at no point in the audio recordings does Officer Tracy urge or direct the hospital staff to quickly clear him.[68] Rather, Officer Tracy reports to hospital staff that

---

[62] *Scott*, 550 U.S. at 380.

[63] Docket 16 ¶ 16.

[64] *See* Arrest Recording; PD Transport Recording.

[65] SPH Transport Recording at 00:40-44.

[66] SPH Transport Recording at 00:45-01:02.

[67] Docket 16 ¶ 20.

[68] *See generally* SPH Transport Recording.

Plaintiff may have cuts on his hands and may be experiencing back pain,[69] and proceeds to treat his own injuries while Plaintiff is examined.[70]

Plaintiff also alleges that "Officer Tracy became increasingly aggressive and hostile" during his arrest and "escalat[ed] the confrontation."[71] But the audio recording of the arrest reflects that Officer Tracy maintained a calm tone throughout the encounter, repeatedly directed Plaintiff to provide identification, keep his hands visible, and exit the vehicle, and repeatedly warned him that the window would be broken if he did not comply.

These examples demonstrate that Plaintiff's account contains multiple factual assertions that are "blatantly contradicted by" the contemporaneous audio recordings. And Plaintiff's "mere allegations" are not supported by any sworn statements made under penalty of perjury or documents such as medical records or other materials.[72] Thus, the Court has relied on Defendants' evidence—the sole evidence before the Court—for purposes of resolving this motion.

## III. Excessive Force

The Court first considers whether the record supports Plaintiff's excessive force claim. Defendants assert that Officer Tracy employed force "low on the

---

[69] SPH Transport Recording at 07:53-58.

[70] SPH Transport Recording at 09:35-10:47.

[71] Docket 16 ¶ 9.

[72] *Anderson*, 477 U.S. at 248-49; Fed. R. Civ. P. 56(c)(1)(A).

continuum of tactics available to police officers" by breaking the window and removing Plaintiff through the doorway after Plaintiff repeatedly refused to comply with the officers' commands, during the course of which both Officer Tracy and Plaintiff slipped and fell to the ground.[73] Plaintiff maintains that Officer Tracy did not employ "'low level' force," because according to Plaintiff, Officer Tracy pulled him through the broken window and "threw [him] to the ground with such force" that his head struck the pavement and his wrist shattered.[74]

A claim that an officer used excessive force in making an arrest is governed by the Fourth Amendment's objective reasonableness standard.[75] "This inquiry requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[76] Relevant considerations include the severity of the suspected offense, whether the person posed an immediate threat to officers or others, and whether the person was actively resisting arrest or attempting to flee.[77] The threat factor is the most important, but the Court considers the totality of the

---

[73] Docket 14-1 at 9–10.

[74] Docket 16 at 2, 11.

[75] *Graham v. Connor*, 490 U.S. 386, 395–97 (1989).

[76] *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396).

[77] *Graham*, 490 U.S. at 396.

circumstances and the availability of less intrusive alternatives.[78] This analysis must allow "for the fact that police officers are often forced to make split-second judgments" and requires reasonableness to "be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[79]

Here, the force used consisted of breaking the driver-side window, removing Plaintiff through the open door, unintentionally falling to the ground, and Plaintiff's handcuffing.[80] Officer Tracy did not strike or kick Plaintiff, and no additional force was used after Plaintiff was restrained.[81] Although this force constituted a meaningful intrusion on Plaintiff's Fourth Amendment interests, the governmental interests here were substantial.[82] Plaintiff was suspected of impaired driving, continued driving after Officer Tracy activated his emergency lights, kept his vehicle running throughout the encounter, refused for nearly 14 minutes to provide identification or exit the vehicle, and repeatedly reached toward objects outside the officers' view despite warnings.[83] Officer Tracy repeatedly directed Plaintiff to provide identification, keep his hands visible, and exit the vehicle and warned him

---

[78] *Bryan v. MacPherson*, 630 F.3d 805, 826, 831 (9th Cir. 2010).

[79] *Graham*, 490 U.S. at 396–97 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).

[80] Docket 14-1 at 5–6; Docket 15 ¶¶ 9, 11, 14; Docket 15-2; Arrest Recording.

[81] Docket 14-1 at 5–6, 9–10; Docket 15 ¶ 11; Arrest Recording.

[82] *See Graham*, 490 U.S. at 396.

[83] Docket 14-1 at 2–5; Docket 15 ¶¶ 5–9; Docket 15-1 at 11–12; Arrest Recording.

that the window would be broken if he did not comply.[84] Only after Plaintiff again moved his hands out of view did Officer Tracy break the window and remove Plaintiff from the vehicle.[85] Balancing the nature of the intrusion against the severity of the suspected offense, the potential threat to officer safety, and Plaintiff's continued resistance, the Court finds that no reasonable juror could conclude that the force used in arresting Plaintiff was objectively unreasonable.[86]

Plaintiff relies on *Coles v. Eagle* to support his assertion that Officer Tracy used excessive force when he removed Plaintiff from his vehicle.[87] But in *Coles*, the record included evidence that officers "shattered the driver's side window, pulled [plaintiff] through that window, . . . kicked him in the upper torso during the extraction," and "continued to beat him until [he was] handcuffed."[88] Plaintiff has presented absolutely no evidence of comparable conduct here. Accordingly, Defendants are entitled to summary judgment on Plaintiff's excessive force claim. Because the claim fails on the merits, the Court does not reach whether the officers would be entitled to qualified immunity.

---

[84] Docket 14-1 at 4–5; Docket 15 ¶¶ 8–9; Arrest Recording.

[85] Docket 14-1 at 5–6; Docket 15 ¶¶ 9, 11, 14; Docket 15-2; Arrest Recording.

[86] *See Graham*, 490 U.S. at 396–97.

[87] Docket 16 at 11–12 (citing 704 F.3d 624 (9th Cir. 2012).

[88] 704 F.3d at 627, 630.

## IV. Medical Care

Defendants assert that "Officer Tracy immediately transported Mr. Basargin to the hospital upon seeing blood on his hand" and ensured that hospital personnel evaluated all of Plaintiff's complaints, including his back pain.[89] Plaintiff responds that the hospital examination was "cursory and inadequate" because, despite his complaints of wrist pain and head trauma, hospital personnel performed neither x-rays nor a neurological evaluation.[90]

An officer must "seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital."[91] This obligation does not require an officer "to provide what hindsight reveals to be the most effective medical care for an arrested suspect."[92] Here, the undisputed evidence establishes that Officer Tracy promptly took Plaintiff to the hospital after observing blood on his hands and learning of his back pain, communicated Plaintiff's complaints to the hospital staff, and obtained medical clearance from the hospital staff before returning Plaintiff to detention.[93] Plaintiff

---

[89] Docket 14-1 at 14.

[90] Docket 16 at 17–18.

[91] *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) (quoting *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986)).

[92] *Id.* at 1098.

[93] Docket 14-1 at 6, 14.

offers absolutely no evidence to support his allegations that Officer Tracy delayed necessary care, concealed an injury or complaint, influenced the hospital's examination, or knew that additional treatment was necessary.[94] No reasonable juror could find that Defendants failed to provide Plaintiff with necessary medical attention promptly after Plaintiff's arrest. Defendants are therefore entitled to summary judgment on this claim.

## V. Municipal and Official-Capacity Liability

Defendants assert that the City and Homer Police Department are entitled to summary judgment because Plaintiff "has no evidence they acted improperly" and identifies no unconstitutional policy, custom, or failure to train.[95] Plaintiff responds that resolution of the municipal liability claims is "premature" because he has not completed discovery concerning the City's "policies, customs, and practices" or obtained expert analysis of the officers' training.[96]

Municipal liability under 42 U.S.C. § 1983 requires an underlying constitutional violation caused by an official municipal policy, longstanding custom, final policymaker decision, or deliberately indifferent failure to train.[97] Here, the undisputed evidence establishes neither an excessive force violation nor a

---

[94] *See* Docket 16 at 16–18.

[95] Docket 14-1 at 15–17.

[96] Docket 16 at 19–20.

[97] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978); *City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989).

deprivation of objectively reasonable medical care. Because there was no underlying constitutional violation, Defendants are therefore entitled to summary judgment on Plaintiff's claims against the City of Homer and its police department and Plaintiff's official-capacity claims.[98]

## VI. State Law Claims

Defendants assert that Plaintiff's state law claims are "essentially a recitation of his constitutional law claims" and fail for the same reasons as his federal claims.[99] Plaintiff responds that his claims for "assault, battery, and negligence" arise from the same disputed conduct underlying his constitutional claims and therefore cannot be resolved on summary judgment.[100]

Alaska law permits an officer to "use nondeadly force . . . when and to the extent the officer reasonably believes it necessary to make an arrest [or] to terminate an escape or attempted escape from custody."[101] Although a federal excessive force claim and Alaska tort claim are governed by distinct legal standards, the undisputed evidence establishes that Officer Tracy used no more

---

[98] *See Lockett v. City of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55)).

[99] Docket 14-1 at 17.

[100] Docket 16 at 21.

[101] Alaska Stat. § 11.81.370(a).

force than he reasonably believed necessary to remove and restrain Plaintiff.[102] Therefore, Plaintiff's assault and battery claims fail. Plaintiff likewise presents no evidence of a separate breach of duty or causation supporting negligence liability. Defendants are therefore entitled to summary judgment on Plaintiff's state law claims, and the Court need not reach Defendants' statutory and common-law immunity arguments.

## CONCLUSION

For the foregoing reasons, Defendants' Joint Motion for Summary Judgment at Docket 14 is GRANTED. The Clerk of Court is directed to enter final judgment accordingly and close this case.

DATED this 20th day of August, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[102] *See id.*; Docket 14-1 at 5–6; Docket 15 ¶¶ 9, 11, 14; Arrest Recording.